## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| HTZ SOLUTIONS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | |
| v. | ) | |
| | ) | Jury Trial Demanded |
| CHARLES INDUSTRIES, LLC and | ) | |
| AMPHENOL CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff, HTZ Solutions, LLC ("Plaintiff" or "HTZ"), by and through its undersigned attorneys, for its Complaint for trademark infringement, copyright infringement, trade secret misappropriation, breach of contract, and promissory estoppel against Amphenol Corporation and their subsidiary, Charles Industries, LLC ("Defendants"), herein alleges:

## NATURE OF THE ACTION

1.      This is an action for the following: (1) trademark infringement arising under the Lanham Act of the United States, 15 U.S.C. § 1125; (2) copyright infringement arising under the Unites States Copyright Act, 17 U.S.C. § 501; (3) breach of contract for violation of a nondisclosure agreement under the laws of the State of New York; (4) promissory estoppel under the laws of the State of New York; and (5) misappropriation of trade secrets arising under the Defend Trade Secrets Act, 18 U.S.C. § 1836. Defendants are liable under these counts due to their unauthorized reproduction and display of Plaintiff's HTZ Marks, and their unauthorized display and reproduction of Plaintiff's design renderings in Defendants' promotional materials and/or on their websites. Defendants also violated Parties' nondisclosure agreement by disclosing to third-parties Plaintiff's confidential trade secrets, including Plaintiff's customer lists and pricing strategies. As

a result of Defendants' trade secret misappropriation, breach of contract, and promissory estoppel, Defendants have caused Plaintiff to wrongfully lose bids with prospective customers.

## THE PARTIES

2.      HTZ Solutions, LLC is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business at 3995 Commercial Ave., Northbrook, Illinois.

3.      On information and belief, Amphenol Corporation is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business at 358 Hall Avenue, Wallingford, Connecticut 06492.

4.      On information and belief, Charles Industries, LLC is a limited liability corporation organized and existing under the laws of the State of Illinois, having its principal place of business at 1450 American Lane, 20th Floor, Schaumburg, Illinois.

5.      Upon information and belief, Charles Industries, LLC is a wholly owned subsidiary of Amphenol Corporation.

6.      Upon information and belief, Amphenol Corporation considers Charles Industries to be an "Amphenol company" that is part of Amphenol Corporation's business, specifically part of its broadband business.

7.      Upon information and belief, Amphenol Corporation manages Charles Industries, and Charles Industries is controlled by Amphenol.

## JURISDICTION AND VENUE

8.      This action arises under the trademark laws, copyright laws, and trade secret laws of the United States; 15 U.S.C. § 1051 *et seq*.; 17 U.S.C. § 501 *et seq*; and 18 U.S.C. § 1836 *et seq*. This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331. This Court has jurisdiction over Plaintiff's New York breach of contract and promissory estoppel claim

pursuant to 28 U.S.C. § 1367, as these claims arise out of the same case and controversy as Plaintiff's federal claims.

9.      This Court has personal jurisdiction over Defendants because Defendants committed, and continues to commit, acts of trademark infringement, copyright infringement, and trade secret misappropriation in this District and throughout the state of Illinois; Defendant regularly conducts business in this District; and Plaintiff's injury has occurred in this District.

10.     Venue in the Northern District of Illinois is proper pursuant to 28 U.S.C. §§ 1391(b)(2) and 1391(c) because Defendants have committed acts of infringement and misappropriation in this District, Defendants reside in this district, and Defendants have a regular and established place of business in this District.

## FACTUAL BACKGROUND

### A.      HTZ's Trademarks

11.     Since its founding in October 2022, HTZ has quickly become a leader in the telecommunications hand hole vault market, manufacturing high density polyethylene (HDPE) subterranean hand hole vaults that are light weight, simple to install, and rated to be crush-resistant.

12.     Since at least as early as March 2023, HTZ began using both of its inherently distinctive HTZ marks, specifically the HTZ design mark where the letters HTZ are formed in a cube, and its word mark "HTZ" in commerce in connection with its hand hole vault products.

13.    HTZ provides an example of the color version of its design mark, below as Fig. 1:

**Fig. 1**



14.    As an example, one of HTZ's hand hole products is shown below as Figure 2:

**Fig. 2**



15.    HTZ has also sold other HTZ branded hand hole vault products ranging in various dimensions for multiple years.

4

16.     HTZ has continuously and exclusively used its HTZ trademark in United States commerce since its adoption.

17.     HTZ has used and continues to use its HTZ trademark on product packaging, product displays, brochures, and throughout its website and social media pages, among other things.

18.     As a result of its use, advertising, and promotion of its HTZ brands, consumers have come to associate the distinctive HTZ trademarks exclusively with HTZ Solutions and its high-quality products.

19.     HTZ has spent significant amounts of money on marketing, advertising, and promoting its HTZ trademark.

20.     HTZ has generated substantial goodwill and consumer recognition in its HTZ trademarks.

21.     HTZ has derived revenues from the sale of its products branded under its HTZ trademark.

22.     HTZ owns a valid and legally protectable HTZ trademark and word mark. Collectively, each and all of HTZ's rights described herein are referred to as the "HTZ Marks."

23.     HTZ's common law rights in its HTZ Marks accrued and pre-date any use by Defendants.

**B.     HTZ's Copyright Protected Materials**

24.     As part of its marketing strategies, HTZ also displays design diagrams and images of its various hand hole products on its website and in its promotional brochures.

25.     These design diagrams and images are creative works and the subject of Copyright Registration Numbers TX 9-504-542, TX 9-505-319, and TX 9-507-597. The registrations and

figures are attached hereto as exhibits A-1, B-1 and C-1, with the corresponding figures as exhibits

A-2, B-2, and C-2. For example, one such design diagram is reproduced below as Figure 3.

**Fig. 3.[1]**



### C.     HTZ's Trade Secrets

26.     In addition to maintaining trademarks and copyright registrations, HTZ also

possesses customer lists and strategic pricing information that it retained as confidential trade

secrets.

---

[1] Copy Right Registration No. TX 9-504-542, Effective May 28, 2025. Ex.A-1.

27. The hand hole vault manufacturing and sales industry is highly competitive. Manufacturers of hand hole vaults such as HTZ, will seek contracts with hand hole vault installers for bulk orders of vaults, with the value of orders ranging from tens of thousands to hundreds of thousands of dollars per contract.

28. Because of the competitive nature of the industry, HTZ does not publicly disclose its pricing, and instead limits disclosure to a "need to know" basis providing a specific and strategically tailored quote for a customer or prospective customer's order.

29. HTZ determines its prices based on the size of the order, the logistics of fulfilling each order, and other confidential strategic business reasons that would warrant special pricing towards a specific customer.

**D.    Parties Nondisclosure Agreement**

30. Defendants also sell telecommunications goods and services, including hand hole vaults to various companies, including some of the same companies that HTZ sells to directly.

31. On or about July 2024, Minesh Patel, Vice President of Charles Industries Outside Plant Business, approached Jared Warrick, Operations Management & Quality Systems Expert at HTZ to discuss a collaboration between Charles Industries and HTZ.

32. After preliminary discussions, parties entered into a Nondisclosure Agreement ("NDA") on July 9, 2024. Attached hereto as Exhibit D.

33. Subsequent to the execution of the NDA, as early as August 2024, parties outlined a Memorandum of Understanding ("MOU"), wherein HTZ and "Charles, an Amphenol Company" agreed to collaborate within the realm of the NDA and in a spirit of not directly competing with one another on bids.

34.     As part of the MOU, HTZ would provide their hand hole HDPE vaults in bulk to Defendants, who would then resell them as an "Amphenol" branded products.

35.     HTZ would be responsible for manufacturing and applying the Amphenol logo to their hand hole vaults, and Charles would market and sell the vaults through its direct and distributor relationships.

36.     As part of the MOU, Defendants would have no rights to any patents held by HTZ, and they agreed they would not reverse engineer or enable reproduction of HTZ's hand hole vaults in any way.

37.     On August 14, 2024, operating under the terms of the NDA, Plaintiffs sent confidential and trade secret pricing information for their 24x36x24, 17x30x24, 24x30x30, and 24x36x36 products to Defendants.

38.     On August 30, 2024, operating under the terms of the NDA and Defendants' representations that a deal was imminent, Plaintiff provided isometric drawings and two-dimensional views of the 24x36x36 hand hole vault units to Defendants to use in furtherance of the Defendants' sales of HTZ products.

39.     In September 2024, parties graduated the MOU to a more comprehensive Agreement, which was titled "Tolling Agreement," with more detailed provisions regarding the scope of the parties' relationship and additional information regarding the scope of the non-compete clause between HTZ and Defendants.

40.     For many months, the parties engaged in negotiations regarding the terms of the Agreement, but to date, no such Agreement has been signed.

E.      **Defendants' Representations and Promises**

41.     Repeatedly, since July 2024, Charles Industries, primarily through its communications made by Minesh Patel, continuously represented and promised that parties were close to an agreement, including at least the examples listed below, which were being sent while Defendants were also actively seeking pricing information, quotes for potential sales, and discussing customers and prospective customers. Defendants asked for samples (which HTZ provided) and the parties had meetings nearly every week to discuss ongoing sales efforts, finalizing the written agreement, and next steps, some examples of the reassuring statements that Mr. Patel provided to HTZ are noted below:

a.      August 1, 2024: Patel told HTZ via email, "Thank you for taking the time to meet today. It was very beneficial, and I am more enthused about where we can take this partnership!"

b.      August 16, 2024, Patel told HTZ via email, "will modify the MOU terms and put them in a prettier format. I'm putting together a quick business case with the mold modification costs and will be submitting with a Capital Request to Dominic. We will try to get the sign-offs quick, but in fairness, signoffs will take a week or so."

c.      September 9, 2024, Patel told HTZ via email, "I spoke with Jared last week and we would like to get a weekly meeting going to covers actions and overall progress."

d.      September 18, 2024, Patel told HTZ via email, "I know we wanted to get the MOU executed prior to making samples available. We have a customer that we are very close to getting them agree to purchase our product, but they want to see a sample. Is there any way we can make this happen ahead of the MOU?"

e.     September 16, 2024, Patel told HTZ via email, "Thanks for the Agreement. I've never heard the term Tolling in reference to a Private Label arrangement, so I'll need to look it up. The lawyers did what lawyers do. We will need to take this Agreement to our Legal department because it is now an Agreement and not an MOU.. . .There is nothing major here, but the legaleze is going to be complicated due to the above. I was hoping this could be simpler."

f.     September 30, 2024, Patel told HTZ via email, ". . . I need to send this to our Legal team for review. I don't know how long it will take to get there "legal-eze" back, so I don't think this will get done this week. However, I'll do my best to move it along."

g.     October 24, 2024, after an in-person meeting, the parties appear to have reached a verbal agreement, to which Patel then told HTZ via email, "…it was a great meeting that will go a long way to getting the Agreement wrapped up as quickly as possible."

h.     November 7, 2024, Patel told HTZ via email, "…they are reviewing now. I can't provide an expected ETA at this time, but we'll keep pushing."

i.     November 15, 2024, Patel told HTZ via email, "Please find attached Agreement we have been iterating. Legal came back with comments and additions. Much of the additions are good clarifications and constructive."

j.     December 1, 2024, Patel told HTZ via email, "I plan on reviewing the contract on the flight and sharing my thoughts with Legal tomorrow night for their agreement."

k.     December 16, 2024, Patel told HTZ via email, "Here is the much awaited Agreement from Legal. I think this is the furthest we can push on some of the language, so hopefully, it will meet your needs."

l.   December 21, 2024, Patel told HTZ via email, "Charles is committed to it and we've made investments to support our commitment."

m.   January 6, 2025, Patel told HTZ via email, "I'm stuck on a call that is going long and I cannot jump off. I have no updates from Legal, so I have nothing to provide comment. We received the order for customer samples, so we're working our sales plan. Sorry for the late notice."

n.   January 14, 2025, Patel told HTZ via email, "Still nothing back from Legal. I pinged them before flying out yesterday afternoon. I'm in strategy meetings this week, so I won't be able to bang on them as much as I want…." [then went on to ask about a customer question].

42.   Throughout the entire duration of the negotiations around the written contract, Defendants continued to seek information about customers and potential customers, pricing, turnaround time, and other strategic business matters from HTZ and HTZ, relying on the Defendants' representations, disclosed valuable confidential and trade secret information to Defendants pursuant to the NDA.

43.   Plaintiff relied on the promises and representations of Mr. Patel and Defendants that an executed written deal was imminent, but such a written agreement never came to fruition.

44.   Plaintiff relied on Defendants' promises and representations to their detriment, continuing to provide confidential information, trade secrets, and technical assistance to Defendants in the spirt of working towards a written agreement.

**F.   Breach of Contract and Infringement of Intellectual Property Rights**

45.   On information and belief, Defendants chose not to execute a final Tolling Agreement with Plaintiff because Defendants intended to directly compete with Plaintiff by

seeking competitive information, breaching the NDA, and using Plaintiff's confidential pricing strategy to assist other companies in outbidding Plaintiff, for the benefit of Defendants and other third-parties and to the detriment of HTZ.

46. For example, in February 2025, HTZ attended RTIME NTCA Expo, an industry tradeshow in San Antonio, Texas.

47. At the tradeshow, HTZ discovered that a third-party, Telecom Vaults, LLC, was selling unauthorized copies of hand hole vaults identical to HTZ's hand hole products.

48. Telecom Vaults also displayed unauthorized copies of Plaintiff's design diagrams for Plaintiff's hand hole vaults on Telecom's marketing brochures and website. *See* Exhibit E and Exhibit F respectively.

49. For Example, Telecom Vaults displayed Plaintiff's isometric drawings for Plaintiff's 24x36x36 hand hole vault drawings and HTZ's trademarks in their marketing materials.[2]

**Fig. 5[3].**



**CBGE243636**
Appx. Dimensions: 24"Wx36"Lx36"D

Description: Tier 15 & 22 Rated HDPE
24"Wx36"Lx36"D

Unit Weight: T15- 146lb, T22- 148lb
Pallet Weight: T15- 624lb, T22- 632lb
Pallet QTY: 4

Truck Load: 100 units



Telecom Vaults, Inc. / P.O. Box 151 / 600 Bison Ridge Rd. / Auburn, WY 83111 / 224.752.3667 / Sales@TelecomVaults.com

---

[2] *See* Exhibits C-1 and C-2.
[3] Telecom Vault's Marketing Brochure, Exhibit E at 3.

**Fig. 6.[4]**



50.     On information and belief, Defendants, without authorization, provided HTZ's materials to Telecom Vaults and caused Telecom Vaults to display, copy, duplicate, and/or use such materials and HTZ's trademarks.

51.     Defendants are not, and have never been authorized, to authorize or license third parties to use HTZ's materials or trademarks.

52.     On March 10, 2025, Plaintiff met with Minesh Patel to discuss Telecom Vault's unauthorized use of Plaintiff's intellectual property and Patel admitted that Defendants had a business relationship with Telecom Vaults, had provided Telecom Vaults with the materials, and that Defendants were in discussions with Telecom Vaults to remove the infringing materials.

53.     Defendants are not permitted to use HTZ's materials and trademarks outside the scope of the Defendants' permitted use for Charles Industries' sales of HTZ's products, as anticipated by the parties' business partnership.  Defendants' use beyond that scope is not authorized and constitutes infringement.

---

[4] Figure 6 is a zoomed in picture of Figure 5 showing HTZ's isometric drawings and HTZ's Mark being displayed on Telecom Vault's marketing brochure. The same image appears on Telecom Vault's website, Exhibit F at 24; 28; and 30.

**G.      Defendants' Interference with Plaintiff's Prospective Economic Advantage**

54.      On or about March 2025, Plaintiff was ready to engage in a large sale of hand hole vaults to a third party.

55.      Indeed, the sale was all but finalized and was valued at more than $200,000 that Plaintiff expected to earn as a result of that sale.

56.      However, unexpectedly and at the last minute, the third-party informed Plaintiff that they were backing out of the sale and were choosing to go with another entity's hand hole vault.

57.      On information and belief, Defendants used Plaintiff's confidential and trade secret pricing strategies and customer lists to undercut Plaintiff's bid for the third-party sale, directing sales away from Plaintiff.

58.      On information and belief, Defendants have misused Plaintiff's confidential and trade secret information for Defendants' own benefit and/or have disclosed Plaintiff's confidential and trade secret pricing strategies and customer lists to a multitude of potential customers, in at least two instances of such breaches of confidentiality and interference with HTZ's prospective economic advantage.

59.      On information and belief, discovery will reveal the full extent and nature of Defendants' breaches of confidentiality.

60.      Defendants' actions in total amount to a breach of the NDA, promissory estoppel, misappropriation of Plaintiff's valuable trade secrets, and because no Tolling Agreement was ever executed, an unauthorized and infringing use of Plaintiff's trademarks and copyrights.

## COUNT I
## FEDERAL TRADEMARK INFRINGEMENT 15 U.S.C. § 1125(a)

61.     Plaintiff repeats and incorporates by reference the allegations contained in Paragraphs 1 through 60 as if fully set forth herein.

62.     HTZ owns the valid and legally protectable HTZ Marks.

63.     HTZ's rights in its HTZ Marks predate any rights that Defendants may claim.

64.     Defendants have used and continue to use HTZ Marks beyond the scope of any purported authorization, and beyond the scope of the parties' previously anticipated business relationship.

65.     Defendants' unauthorized use of HTZ's Marks in interstate commerce in connection with hand hole vaults and related products is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with HTZ, or as to the origin, sponsorship, or approval of Defendants' goods or commercial activities by HTZ and has harmed and is likely to continue to harm HTZ, in violation of Section 15 U.S.C. § 1125(a).

66.     Defendants' acts of infringement are intentional, malicious, willful, and deliberate.

67.     Defendants have knowingly and willfully intended to trade on the recognition of HTZ's Marks and such action intends to harm the reputation of HTZ.

68.     Defendants' acts of infringement have inflicted and, if not enjoined, will continue to inflict irreparable harm on HTZ. Thus, HTZ has no adequate remedy at law.

69.     Pursuant to 15 U.S.C. § 1117, HTZ is entitled to recover damages in an amount to be determined at trial, including Defendants' profits, HTZ's damages, and costs of the action. Furthermore, the actions of Defendants were undertaken willfully and with the intention of causing confusion, mistake, or deception, making this an exceptional case entitling HTZ to recover additional treble damages and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

## COUNT II
## DIRECT COPYRIGHT INFRINGEMENT 17 U.S.C. § 501

70.     Plaintiff repeats and incorporates by reference the allegations contained in paragraphs 1 through 69 as if fully set forth herein.

71.     Plaintiff is the sole owner of each of Copyright Registration Nos. TX 9-504-542, TX 9-505-319, and TX 9-507-597 and the related infringed images. *See* Ex. A-1; A-2; B-1; B-2; C-1; C-2.

72.     Each of the infringed images is an original pictorial work and constitutes copyrightable subject matter under 17 U.S.C. §§ 101 and 102.

73.     Defendants have infringed HTZ's copyright protected materials by using such materials beyond the scope of any purported authorization, including at least by copying them and causing third parties to duplicate and display HTZ's materials in Defendants' and third party's marketing materials and websites.

74.     Specifically, although HTZ provided copies of their images to Defendants for the limited purpose of using them to further their business relationship, HTZ did not authorize Defendants to further copy or disseminate their images to third parties or to use the materials beyond the scope of the relationship with HTZ and its products.

75.     Defendants had no right to distribute any of the infringing images to any of third parties for the purpose of incorporating such materials into third party items. Nevertheless, without authorization, Defendants distributed the infringing images to their customers who then stored the infringing images on the customer's websites and reproduced the images on certain advertising materials.

76.     The foregoing acts of Defendants constitute direct infringement of HTZ's copyrights of the infringed images in violation of 17 U.S.C. § 106.

77.     As a result of Defendants' infringing activities, HTZ has suffered monetary damages as well as damages to its goodwill and reputation.

78.     Pursuant to 17 U.S.C. § 504(b), HTZ is entitled to their actual damages, including Defendants' profits from infringement in connection with the infringing images, in an amount to be proven at trial.

79.     Defendants' conduct has caused and will continue to cause great and irreparable injury that cannot fully be compensated or measured in money. HTZ has no adequate remedy at law.

80.     Pursuant to 17 U.S.C §§ 502 and 503, HTZ is entitled to injunctive relief prohibiting Defendants from further infringing HTZ's copyrights, and ordering Defendants to impound and destroy all copies of the infringed images made in violation of HTZ's exclusive rights.

## COUNT III
## VICARIOUS COPYRIGHT INFRINGEMENT 17 U.S.C. § 501

81.     Plaintiff repeats and incorporates by reference the allegations contained in paragraphs 1 through 80 as if fully set forth herein.

82.     Defendants' partners (for example Telecom Vaults) copied the infringing images in order to advertise and market consumer products, but without the consent, approval, or license of HTZ. Each unauthorized Copying of one of the infringed images by each of Defendants' partners constitutes a separate and distinct act of direct infringement.

83.     Defendants had the ability to supervise and control the infringing acts of its partners who have directly infringed HTZ's copyrights by Copying the infringing images.

84.     On information and belief, Defendants had the right to stop or limit the directly infringing conduct, as well as the practical ability to do so, considering that the partners obtained

the infringing images and the purported rights to use the infringing images directly from Defendants.

85.     On information and belief, Defendants obtained a direct financial benefit from the infringing activities of their partners with respect to each of the uses of the infringed images by their customers by obtaining some form of payment for the purported right to display Plaintiff's images.

86.     The actions of Defendants constitute vicarious copyright infringement.

87.     On information and belief, Defendants sent the infringing images to multiple partners for those partners to advertise and market consumer products, but without the consent, approval, or license of HTZ.

88.     On information and belief, discovery will reveal the full extent and nature of Defendants' vicarious copyright infringement.

89.     HTZ is informed and believes that the foregoing acts of infringement have been willful and intentional, in disregard of and with indifference to HTZ's rights.

90.     Pursuant to 17 U.S.C. § 504(b), HTZ is entitled to its actual damages, including Defendants' and each of its infringing partners' profits from infringement in connection with the infringing images, in an amount to be proven at trial.

91.     Defendants' conduct has caused and will continue to cause great and irreparable injury that cannot fully be compensated or measured in money. HTZ has no adequate remedy at law.

92.     Pursuant to 17 U.S.C §§ 502 and 503, HTZ is entitled to injunctive relief prohibiting Defendants from further infringing HTZ's copyrights, and ordering Defendants to impound and destroy all copies of the infringed images made in violation of HTZ's exclusive rights.

## COUNT IV
## CONTRIBUTORY COPYRIGHT INFRINGEMENT 17 U.S.C. § 501

93.     Plaintiff repeats and incorporates by reference the allegations contained in paragraphs 1 through 92 as if fully set forth herein.

94.     Defendants' partners (for example Telecom Vaults) copied the infringing images in order to advertise and market consumer products, but without the consent, approval, or a license from HTZ.

95.     Each unauthorized Copying of one of the infringed images by each of Defendants' partners constitutes a separate and distinct act of direct infringement.

96.     Through its conduct alleged herein, Defendants knowingly and systematically induced, caused, materially contributed to, actively encouraged and participated in the infringing copying of the infringed images by its partners.

97.     Specifically, Defendants distributed infringing images to their partners with the sole intention that the partners then display publicly and distribute to the public the infringing images. Furthermore, Defendants, either expressly or through their agents, distributed digital copies of the infringing images for the express purpose of their customers Copying and creating their own derivative works including advertising and marketing materials that included the infringing images.

98.     Defendants knew or should have known that by distributing and making the infringing images available to them, their partners would be publicly displaying and distributing the infringing images.

99.     Defendants knew or should have known that by distributing and making available to their partners digital copies of the infringing images, that their partners would create derivative work advertisements and marketing materials, inclusive of the infringing photos, thereby Copying them.

100.     Defendants' actions constitute contributory copyright infringement.

101.     On information and belief, Defendants sent the infringing images to multiple partners for those partners to advertise and market consumer products, but without the consent, approval, or license of HTZ.

102.     On information and belief, discovery will reveal the full extent and nature of Defendants' contributory copyright infringement.

103.     Defendants have benefited from its contributory infringement of each of the infringed photos in the form of fees, promotion, and corporate goodwill.

104.     As a result of Defendants' contributory infringement, HTZ has suffered monetary damages as well as damages to its goodwill and reputation.

105.     On information and belief, HTZ believes that the forgoing acts of infringement have been willful and intentional, in disregard of and with indifference to HTZ's rights.

106.     Pursuant to 17 U.S.C. § 504(b), HTZ is entitled to its actual damages, including Defendants' and each of their customers' profits from infringement in connection with the infringing images, in an amount to be proven at trial.

107.     Defendants and each of their customers' infringing conduct is causing and, unless enjoined and restrained by this Court, will continue to cause HTZ great and irreparable injury that cannot fully be compensated or measured in money. HTZ has no adequate remedy at law. Pursuant to 17 U.S.C. §§ 502 and 503, HTZ is entitled to injunctive relief prohibiting Defendants from further infringing HTZ's copyrights, and ordering Defendants to impound and destroy all copies of the Infringed images made in violation of HTZ's exclusive rights.

## COUNT V
## BREACH OF CONTRACT UNDER NEW YORK STATE LAW

108.    Plaintiff repeats and incorporates by reference the allegations contained in paragraphs 1 through 107 as if fully set forth herein.

109.    The NDA was signed July 9, 2024 and is a valid and enforceable contract.

110.    The NDA is governed by and subject to the laws of the State of New York. *See* Ex. D at ¶ 11.

111.    HTZ performed all of the conditions, covenants and promises required on its part to be performed in accordance with the terms of the NDA.

112.    Under the terms of the NDA, Charles Industries agreed it would not use HTZ's Confidential Information, or permit it to be accessed or used, for any purpose other than the Purpose, or in any manner to the Disclosing Party's detriment. *Id.* at ¶ 4.

113.    Defendants breached their contractual obligations to HTZ by disseminating HTZ's confidential information.

114.    Defendants breached their contractual obligations to HTZ by disseminating HTZ's customer lists and confidential pricing strategies that constitute HTZ's trade secrets to third parties.

115.    Defendants also breached their contractual confidentiality obligations to HTZ under the NDA in order to facilitate their transactions with Channell and Telecom Vaults.

116.    On information and belief Defendants breached their contractual confidentiality obligations to HTZ under the NDA in order to facilitate transactions with multiple third parties.

117.    On information and belief, discovery will reveal the full extent and nature of Defendants' breach of confidentiality obligations to HTZ under the NDA.

118.    Defendants' breaches of the NDA caused HTZ damages in an amount to be determined and proven at trial.

21

## COUNT VI
## PROMISSORY ESTOPPEL UNDER NEW YORK STATE LAW

119.     Plaintiff repeats and incorporates by reference the allegations contained in paragraphs 1 through 118 as if fully set forth herein.

120.     As described more fully above, between July 2024 and present, Defendants repeatedly assured HTZ that Charles Industries and their representatives were working in good faith towards finalizing the Tolling Agreement. Defendants intended that HTZ rely on these assurances.

121.     HTZ reasonably and justifiably relied on these assurances, including by expending significant time and resources towards finalizing the Tolling Agreement, including paying costs and attorneys' fees for contract review, as well as continuing to disclose information to and work with Charles Industries.

122.     HTZ was damaged by its reliance on Defendants' promises in an amount to be determined and proven at trial, and justice so requires that Defendants be held accountable for their promises to HTZ.

## COUNT VII
## FEDERAL MISAPPROPRIATION OF TRADE SECRETS 18 U.S.C. § 1836

123.     Plaintiff repeats and incorporates by reference the allegations contained in paragraphs 1 through 122 as if fully set forth herein.

124.     As described more fully above, between September 2024 and January 2025, Defendants repeatedly assured HTZ that Charles Industries and their representatives were working in good faith towards finalizing the Tolling Agreement. Defendants intended that HTZ rely on these assurances.

125. HTZ provided to Defendants confidential, trade secret information concerning the HTZ's customer lists and pricing structure of their hand hole vault products, including how HTZ priced the various sizes of hand hole vaults by volume and by customer.

126. In a competitive market for hand hole vaults, the information HTZ provided to Defendants has independent economic value from not being generally known nor readily ascertainable through proper means.

127. In order to access HTZ's trade secrets and confidential information, Defendants approached HTZ offering to collaborate, executed a non-disclosure agreement, and made continuous representations that parties were endeavoring towards a deal.

128. HTZ took reasonable steps and precautions to safeguard the information HTZ provided to Defendants by not disclosing the information outside of HTZ and only sharing this information with Defendants after the execution of an NDA.

129. HTZ reasonably relied on Defendants to maintain the secrecy of the information concerning HTZ's pricing strategies and to only use that information to assist HTZ in acquiring additional sales and contracts.

130. The customer lists and pricing for HTZ's hand hole vaults were intended for use in products to be sold in interstate commerce.

131. Defendants knew they had a duty to maintain the secrecy of the information HTZ provided to them concerning HTZ's bulk pricing strategies due to the NDA.

132. Upon information and belief, Defendants misappropriated HTZ's trade secret information concerning HTZ's customer lists and bulk pricing strategies by disclosing these customers and strategies to third parties.

133. Upon information and belief, Defendants misappropriated HTZ's trade secret information concerning HTZ's customer lists and bulk pricing strategies by leveraging that information to allow third parties with whom Defendants had business relationships with, to undercut HTZ's bids and thereby direct sales away from HTZ.

134. As a result of Defendants' misappropriation through unauthorized use and disclosure of HTZ's trade secrets, Defendants have violated the Defend Trade Secrets Act (DTSA) under 18 U.S.C. § 1836.

135. On information and belief, discovery will reveal the full extent and nature of Defendants' misappropriation and disclosure of HTZ's trade secrets to third parties.

136. HTZ is entitled to damages for Defendants' misappropriation of HTZ's trade secrets, including for HTZ's actual loss and Defendants' unjust enrichment, to reasonable attorneys' fees, and to all other relief provided under the DTSA, in an amount to be determined at trial, but, upon information and belief, which is no less than $75,000.

## DEMAND FOR JURY TRIAL

137. HTZ hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment against Defendants as follows:

1. That Defendants have infringed Plaintiff's HTZ trademarks;

2. That Defendants have willfully infringed Plaintiff's HTZ trademarks;

3. An injunction against further infringement of Plaintiff's HTZ trademarks;

4.      Order the impoundment and destruction of all copies of products bearing the infringing trademark in the custody, possession, or control of Defendants or its agents, employees, and affiliated companies;

5.      That Plaintiff be awarded Defendants' profits, damages, costs, and attorneys' fees pursuant to Defendants' violations of 15 U.S.C. § 1125(a).

6.      Award Plaintiff with treble damages for all trademark damages awarded herein;

7.      Award Plaintiff with exemplary and punitive trademark damages;

8.      That Defendants and its agents and employees be enjoined from infringing HTZ's copyright protected materials in any manner, specifically the subject of Copyright Registration Numbers TX 9-504-542, TX 9-505-319, and TX 9-507-597;

9.      That HTZ be awarded Defendants' profits, damages, costs, and attorney's fees pursuant to Defendants' violation of 17, U.S.C. § 504(b) for each separate infringement;

10.     That HTZ be awarded its reasonable attorneys' fees and costs in this action, under 17 U.S.C. § 505;

11.     A declaration that Defendants breached their obligations under the Nondisclosure Agreement;

12.     Award Plaintiff with reliance damages as a result of Defendants' promises towards executing the Tolling Agreement;

13.     Award monetary damages in an amount of at least $75,000 and sufficient to compensate HTZ for the harm caused by Defendants' misappropriation of HTZ's trade secrets;

14.     That Plaintiff be awarded such further legal and equitable relief as the Court deems just and proper.

Dated: July 17, 2025                    Respectfully submitted,


                                        By: /s/Tiffany D. Gehrke
                                              Tiffany D. Gehrke
                                              Daniel Gonzalez
                                              MARSHALL, GERSTEIN & BORUN LLP
                                              233 South Wacker Drive
                                              6300 Willis Tower
                                              Chicago, Illinois 60606-6357
                                              (312) 474-6300
                                              tgehrke@marshallip.com
                                              dgonzalez@marshallip.com

                                        *Attorneys for Plaintiff,* HTZ SOLUTIONS, LLC

26